**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **MO: 20-CR-143-DC** |
| | § | |
| **MAURICE DAVIS** | § | |

<u>**ORDER DENYING MOTION TO SUPPRESS**</u>

BEFORE THE COURT is the Motion to Suppress filed by Defendant Maurice Davis (Defendant). (Doc. 39). After due consideration of the evidence presented, the parties' arguments, and the relevant law the Court **DENIES** the Motion to Suppress. (Doc. 31).

## I. BACKGROUND

On July 22, 2017, a federal grand jury returned a one count indictment charging Defendant with knowingly possessing a firearm despite knowing he was a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 16). Defendant filed the instant Motion to Suppress on October 9, 2020. (Doc. 31). The Government filed a timely Response in opposition to the Motion to Suppress. (Doc. 39). The Court conducted a hearing in this matter on November 13, 2020. (*See* Doc. 53).

## II. FACTS

At the suppression hearing, the Government presented the testimony of Sergeant Tyler Rodgers and Corporal John Langs of the Odessa Police Department (OPD). The Government also offered video footage from Corporal Langs' body camera.

In May 2020, OPD officers received an anonymous tip that Defendant was distributing narcotics from his trailer at 2215 W. 48th Street, Odessa, Texas. Officers conducted "spot checking," or periodic surveillance, before commencing consistent surveillance on May 21,

2020. On May 21, OPD officers observed short term contact between Defendant and the driver of a vehicle, which they believed was consistent with narcotics trafficking. Officers attempted to conduct a traffic stop of the vehicle, but the driver evaded the officers. OPD officers continued surveillance of Defendant's residence on May 22, 2020, and observed short term contacts with three vehicles. During the evening of May 22, officers conducted a traffic stop of the third vehicle, a Ford F-150, and the driver admitted that he gave methamphetamine to Defendant.

Sergeant Rodgers testified that, because Defendant had cooperated with OPD in the past, the officers decided to contact Defendant, detain him, and then prepare an application for a search warrant. Approximately six OPD officers in marked and unmarked units went to Defendant's home. Sergeant Rodgers was not wearing a body camera as he had been conducting undercover surveillance. Sergeant Rodgers observed Defendant outside of his trailer. Defendant saw the marked police units and went inside his trailer. Sergeant Rodgers testified that as soon as the officers started knocking and announcing their presence, the trailer started moving. He testified he heard someone in the trailer running back and forth, heard doors opening and slamming, and heard a toilet flushing. Sergeant Rodgers concluded that Defendant was destroying evidence. After hearing the toilet flush, Sergeant Rodgers called, "Mo, come to the door." As the door to the trailer was secured from the inside, one of the officers on the scene broke the window of the trailer and ordered Defendant to come out. Eventually Defendant opened the door and came out. According to Sergeant Rodgers, it took Defendant approximately three to five minutes to come to the door.

Sergeant Rodgers testified the officers conducted a protective sweep of the trailer and discovered a woman inside the trailer. No incriminating evidence was observed during the protective sweep.

2

Corporal Langs testified that he was informed that officers were being dispatched to the scene to contact Defendant and execute a search warrant. He understood that the officers intended to contact the occupants of the trailer prior to the issuance of the warrant in order to the secure the trailer and prevent the destruction of evidence. Corporal Langs testified that about seven officers arrived at the trailer at approximately 1:00 a.m. All the officers arrived at roughly the same time. After Corporal Langs exited his vehicle, he retrieved a breaching tool. He did not observe Defendant outside the trailer, but observed other officers calling for Defendant to exit the trailer. When Defendant failed to exit, the officers approached the door. Corporal Langs did not see the trailer moving or hear a toilet flushing as he approached the door of the trailer.

The officers tried to breach the door but were unsuccessful. Corporal Langs heard a voice yell, "I'm coming." The officers ceased trying to breach the door but resumed when the door did not open. Corporal Langs heard Defendant say he needed a pair of pliers to open the door, but the door did not open. Corporal Langs testified the officers then broke the window in the door in order to gain a view of the interior of the trailer.

Defendant eventually opened the door and exited. The officers detained and handcuffed Defendant. Defendant asked Corporal Langs what was happening, and Corporal Langs told him a search warrant was being executed, although Corporal Langs knew no search warrant had been issued at that time.

The video footage from Corporal Langs' body camera largely corroborates the officers' testimony. The body camera footage demonstrates that when Corporal Langs exited his vehicle there were already two police vehicles on the scene. Corporal Langs retrieved an item from a compartment in the rear left door of his patrol unit and began walking toward the trailer.

Sergeant Frescas[1] came into view ahead of him, and a voice can be heard shouting "Mo, come to the door." As Corporal Langs approached and turned to the left, Sergeant Rodgers came into view standing nearer to the trailer and holding a rifle. Sergeant Rodgers shouted, "Mo, come to the door." Sergeants Frescas and Rodgers moved toward the door ahead of Corporal Langs, and one of them commented, "He already saw us."

All three officers approached the door of the trailer, and Sergeant Frescas tried to open the door. He said, "It's locked." Sergeant Rodgers yelled, "Mo, come to the door, now." A few moments later, Sergeant Frescas stepped up to the door with a breaching tool and tried to break open the door. While Sergeant Frescas attempted to force an entry, Defendant said, "Hold on. Hold on." The officers yelled commands to "Come to the door" and "Open the door." Defendant said, "I'm opening it." Sergeant Frescas paused for a moment and then smashed the window in the trailer's door. As he pulled at the door through the broken window, several officers shouted commands for Defendant to open the door. Defendant yelled, 'I'm coming," and the officers continued to shout orders. Defendant called that he needed to get pliers to unlock the door handle. The officers yelled commands that Defendant open the door and kick the door. Defendant repeated that he needed to grab the pliers. Approximately fifteen seconds later, Defendant opened the door and exited the trailer. He asked what was going on and several officers replied, "Search warrant." Corporal Langs handcuffed Defendant and began to lead him away. He asked Defendant who else was in the trailer, and Defendant responded, "My ex-girlfriend."

Corporal Langs escorted Defendant away from the trailer before stopping to adjust his handcuffs. As Corporal Langs adjusted the handcuffs, Defendant again asked what was going on. Corporal Langs responded, "Search warrant." When Defendant asked what the search warrant

1. At the suppression hearing, Corporal Langs identified the law enforcement officer as Sergeant Polo Frescas.

was for, Corporal Langs responded "You'll be told here in a minute." Several other officers and a woman are visible at the edge of the frame standing near the trailer. Sergeant Rodgers approached Defendant and spoke with him. As they spoke, an officer escorted the woman away from the trailer. Defendant told Sergeant Rodgers there was marijuana in the trailer, but no methamphetamine.

The body camera footage indicates that Corporal Langs exited his vehicle approximately fifty seconds after the start of the video, Defendant exited the trailer approximately two minutes and thirty seconds after the start of the video, and the woman was standing outside the trailer with the officers approximately three minutes and thirty seconds after the start of the video.

After conducting the protective sweep, officers remained at the scene. Sergeant Rodgers completed an application for a search warrant, and state District Judge Sara Kate Billingsley issued a search warrant at 1:56 a.m. During the execution of the search warrant, OPD officers discovered the firearm that forms the basis of this prosecution.

### III. LEGAL STANDARD

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. The Supreme Court has determined warrantless searches and seizures are per se unreasonable unless an exception to the warrant requirement is applicable. *See Katz v. United States*, 389 U.S. 347, 357 (1967).

Evidence that law enforcement officers obtain in violation of the Fourth Amendment is subject to suppression under the exclusionary rule. *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014). "[T]he exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be

derivative of an illegality, the so-called fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. ___, 136 S. Ct. 2056, 2061 (2016) (internal quotation marks omitted) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).

Ordinarily, the defendant bears the burden of proving by a preponderance of the evidence that the evidence at issue was obtained in violation of the Fourth Amendment. *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). However, when law enforcement officers conduct a search or seizure without a warrant, the government bears the burden of proving by a preponderance of the evidence that the search or seizure was constitutional. *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012).

## IV. DISCUSSION

Defendant argues that the evidence of the firearm and his statements should be suppressed as the products of an unconstitutional search of his residence. (*See* Doc. 31 at 2). Specifically, Defendant contends that the officers could not affect a warrantless entry of his home without probable cause and exigent circumstances. *Id.* at 2–4. Defendant concedes there was probable cause to believe that narcotics were present in the trailer but argues there were no exigent circumstances other than those created by the officers. *Id.* at 4. He argues the officers did not approach the trailer to conduct a "knock and talk" but to demand entry and that they created any exigency with their show of force. *Id.* at 4–5.

The Government contends the officers had a legitimate reason to be at the residence because they intended to conduct a "knock and talk" prior to obtaining a search warrant. (Doc. 39 at 4). The Government further argues that there was reasonable suspicion that the area to be swept contained individuals and evidence that could be destroyed, and the officers heard sounds consistent with the destruction of evidence. *Id.* at 5. The Government also asserts the protective

6

sweep was an appropriate cursory inspection of areas that could harbor an individual. *Id.* Finally, the Government contends that even if there was a constitutional violation, the relevant evidence was sufficiently attenuated from the illegality due to the issuance and execution of the search warrant. *Id.* at 6.

The Court will first consider whether the officers' attempt to force an entry into the trailer violated the Fourth Amendment.

It is black letter law that a warrantless entry into and search of a home is presumptively prohibited by the Fourth Amendment. *See United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2010). However, police may conduct a warrantless search of a home if there is probable cause to believe an item subject to seizure is at the residence and exigent circumstances exist. *Id.* Yet, "no amount of probable cause can justify a warrantless search or seizure absent exigent circumstances." *Horton v. California*, 496 U.S. 128, 137 n.7 (1990) (internal quotation marks omitted).

Defendant conceded that there was probable cause to believe the trailer contained contraband. Accordingly, the issue is whether exigent circumstances existed.

Under Supreme Court precedent, "the need to prevent the imminent destruction of evidence has long been recognized as a sufficient justification for a warrantless search." *Kentucky v. King*, 563 U.S. 452, 460 (2011). The Fifth Circuit employs a non-exhaustive five factor test to determine whether exigent circumstances existed:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) the information indicating the possessors of contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that

> efforts to dispose of it and to escape are characteristics in which those trafficking in contraband generally engage.

*Aguirre*, 664 F.3d at 611 (quoting *United States v. Mata*, 517 F.3d 279, 287 (5th Cir. 2008)).

The record suggests there was a pressing need to halt the destruction of evidence. There was reason to believe the trailer contained contraband, based on the statements of the driver of the F-150, who admitted he delivered methamphetamine to Defendant. The uncontroverted evidence establishes Sergeant Rodgers heard sounds consistent with the destruction of evidence shortly after the officers arrived at the scene. The footage from Corporal Langs' body camera demonstrates Sergeant Rodgers was the officer in closest proximity to the trailer at the time. The events at issue occurred at approximately 1:00 a.m., a time when it is more difficult to obtain a warrant. *See United States v. Menchaca-Castruita*, 587 U.S. 283, 294 (5th Cir. 2009) (noting the lack of ready access to a magistrate in the late evening). The uncontroverted evidence in the record also establishes Defendant was aware of the officers' presence. Finally, the officers were investigating Defendant in relation to methamphetamine trafficking. "Destruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain." *King*, 563 U.S. at 461. On balance, the Court concludes that there were exigent circumstances present in this case.

Defendant argues that the officers impermissibly created the exigent circumstances in this case and points to the officers' intent to "ram the door in and enter" rather than to conduct a "knock and talk." (Doc. 31 at 4).  However, the case law Defendant relies on was decided prior to *Kentucky v. King*. In *King*, the Supreme Court stated that if "the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed." *King*, 563 U.S. at 462. The subjective intent of the officers is irrelevant. *See id.* at 464 (noting cases

that considered whether officers had a bad faith intent were "fundamentally inconsistent with [the Supreme Court's] Fourth Amendment jurisprudence").

Further, this case does not present the scenario the Supreme Court referenced in *King*, "where the police, without a warrant or any legally sound basis for a warrantless entry, threaten that they will enter without permission unless admitted." 563 U.S. at 462 n.4. The evidence in the record demonstrates that Defendant saw the officers arrive, entered the trailer, and, shortly thereafter, Sergeant Rodgers heard movements and a toilet flushing. These events occurred before the officers approached the door with a breaching tool and attempted to force an entry. The Court concludes that there were exigent circumstances and the police did not create the exigency by engaging in or threatening to engage in conduct that violates the Fourth Amendment.

Defendant conceded that there was probable cause to believe the trailer contained contraband, and the Court has concluded exigent circumstances were present. Accordingly, a warrantless entry of the trailer was not impermissible under the Fourth Amendment. Defendant has not challenged the alleged protective sweep, so the Court will not address the Government's arguments as to its propriety. And as there was no Fourth Amendment violation, the Court need not consider the Government's attenuation argument.

## V. CONCLUSION

Based on the foregoing discussion, the Court **ORDERS** that Defendant's Motion to Suppress is **DENIED**. (Doc. 31).

It is so **ORDERED**.

SIGNED this 18th day of February, 2021.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE